IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ADAPTIX, INC. | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION NO. 6:15-CV-00043 |
| | § | RWS-JDL |
| V. | § | |
| | § | JURY TRIAL DEMANDED |
| AT&T MOBILITY LLC | § | |
| *Defendant.* | § | |
| | § | |

## REDACTED MEMORANDUM OPINION AND ORDER

Before the Court is Defendant AT&T Mobility LLC's ("AT&T") Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a) (Doc. No. 25) ("Motion"). Plaintiff Adaptix, Inc. ("Adaptix") filed a response (Doc. No. 28) ("Response") to which AT&T replied (Doc. No. 31) ("Reply") and Adaptix filed a Sur-Reply (Doc. No. 33) ("Sur-Reply"). After considering the parties' arguments, the Court **DENIES** AT&T's Motion to Transfer Venue.

## BACKGROUND

On January 13, 2015, Adaptix filed the instant action against AT&T, alleging infringement of U.S. Patent No. 8,934,375 ("the '375 Patent"). On that same day, Adaptix also filed 2 additional actions alleging infringement of the '375 Patent in this District (6:15-cv-00044 and 6:15-cv-00045), both of which were assigned to Judge Schroeder and referred to the undersigned. Adaptix has other infringement actions pending in both this District and the Northern District of California involving related patents; however, only the instant action and the two same-day filings in this District identified above involve the '375 Patent.[1] On July 30, 2015,

---

[1] As discussed in greater detail *infra*, the other pending actions involve related patents.

AT&T filed the instant motion requesting to transfer venue to the Northern District of California ("NDCA"). (Doc. No. 25.)

Adaptix is a Delaware corporation with a principal place of business in Plano, Texas. Declaration of Jonathan R. DeBlois (Doc No. 28-1) ("DeBlois Decl.") at ¶ 4. All of Adaptix's electronically-stored documents are located on drives in Plano, Texas. *Id.* at ¶ 5.

AT&T is a Delaware limited liability company. (Doc. No. 16, at ¶ 3.) AT&T employees knowledgeable about "the implementation of 3GPP specifications in the AT&T Mobility network" are located in Redmond, Washington, Chicago, Illinois, and Atlanta, Georgia. Declaration of Richard Caine (Doc. No. 25-2) ("Caine Decl.") at ¶ 4. AT&T maintains a facility in San Francisco, California for testing the network, and two foundry facilities in Plano, Texas, which collaborate with third parties in developing and demonstrating domain and enterprise solutions. *Id.* at ¶¶ 5, 6. Two AT&T employees with relevant knowledge and documents concerning the implementation of 3GPP specifications on the network are located in Farmer's Branch, Texas. *Id.* at ¶ 7. One AT&T employee with relevant knowledge and documents concerning the implementation of the 3GPP specifications on the network is located in this District. *Id.* at ¶ 8.

## LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately, it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C.

§ 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). The party seeking transfer must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). To show good cause, the moving party must demonstrate the transferee venue is clearly more convenient. *Id.*

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

## DISCUSSION

The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I,* 371 F.3d at 203. In a patent infringement action, venue is proper in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). In this case, Adaptix does not contest that this suit could have been brought in the Northern District of California.

Thus, the threshold requirement for a § 1404(a) transfer has been satisfied. As to the convenience factors, however, the Court finds that AT&T has not met its burden of establishing that the Northern District of California is "clearly more convenient."

## I. The Private Interest Factors

*(a) The Relative Ease of Access to Sources of Proof*

For this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof. The Federal Circuit requires the Court to assume that the bulk of all relevant evidence will come from the accused infringer. *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). As a result, "the place where the defendant's documents are kept weighs in favor of transfer to that location.'" *Id.* (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). To meet its burden, however, AT&T must identify its sources of proof with some specificity such that the Court may determine whether transfer will increase the convenience of the parties. *J2 Global Commc'ns, Inc. v. Proctus IP Solutions, Inc.*, No. 6:08-cv-211, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009); *see also Invitrogen v. Gen. Elec. Co.,* No. 6:08–cv–113, 2009 WL 331889, at *3, (E.D. Tex. Feb. 9, 2009) (finding that general statements that relevant documents were located in either England or New Jersey "fail to show that transfer would make access to sources of proof either more or less convenient for the parties").

With regards to its own documents and witnesses, AT&T makes no claim that the majority, or even the minority, of its documents and witnesses are located in the Northern District of California. Indeed, in its declaration, AT&T states that AT&T employees knowledgeable about "the implementation of 3GPP specifications in the AT&T Mobility network" are located in Redmond, Washington, Chicago, Illinois, and Atlanta, Georgia. Caine

Decl. at ¶ 4. AT&T provides no specific statements about the location of its documents. Ultimately, AT&T only specifically identifies one witness, Mr. Caine, who is located in the Northern District of California, and identifies six others who are located in Washington. (Doc. No. 31, at 3). AT&T instead contends that this factor weighs in favor of transfer because at least two of Acacia's employees are located in California and there are several relevant third parties located in California. (Doc. No. 25, at 11.) For example, AT&T contends ████████ ██████████████████████████████████████████ and therefore relevant witnesses and documents will be located in the Northern District of California. *Id.* AT&T also names Qualcomm and Broadcom as having relevant information, and identifies a prosecuting attorney for a related patent who is located in the Northern District of California. *Id.*

Adaptix maintains that all of its electronically-stored documents related to this litigation are located on drives in Plano, Texas. DeBlois Decl. at ¶ 5. Adaptix identifies two employees with relevant knowledge in or near this District, Marvin Key and Christian Dubuc. (Doc. No. 28, at 3.) Adaptix also identifies AT&T's Principal Architect, Marc Grant, who has helped build AT&T's 4G LTE network and is located in Austin, Texas. (Doc. No. 28, at 7.) Adaptix further contends that because AT&T's parent, AT&T Inc., is located in Dallas, Texas, that AT&T can produce documents and witnesses at that location. (Doc. No. 28, at 8.)

The Federal Circuit requires this Court to assume that the bulk of all relevant evidence will come from the accused infringer. *In re Genentech, Inc.*, 566 F.3d at 1345. Yet, AT&T has failed to specifically identify the location of its relevant documents. Without any identification of the location of AT&T's relevant documents by AT&T as the movant, this Court would be forced to merely speculate regarding their location. AT&T further does not specify the location or types of documents that any third parties may have. Rather, AT&T simply sets forth that

███████████████████████████████████████████ Qualcomm supplies chips that enable relevant features of those devices, and Broadcom developed and patented prior art systems. (Doc. No. 25, at 11.) These generalized and ambiguous statements regarding the location of sources of proof fail to help the Court decipher the convenience of the Northern District of California. The Court declines to engage in speculation in weighing this factor, where here, AT&T has not met its burden in identifying the location of its sources of proof. Indeed, AT&T has not identified the location of any of its relevant documents, and has only identified one AT&T employee with relevant knowledge in the Northern District of California. AT&T has also failed to identify any third-party documents or witnesses located in the Northern District of California with sufficient specificity. Moreover, AT&T has attested that at least some employees with relevant knowledge and documents are located in or near this District. Caine Decl. at ¶¶ 7, 8. Adaptix has attested that all of its relevant electronically-stored documents are located in this District in Plano, Texas, and has specifically identified two of its employees located just outside this District, as well as an AT&T employee in Austin, Texas with relevant knowledge. Accordingly, the Court finds this factor weighs slightly against transfer.

*(b) The Availability of the Compulsory Process to Secure the Attendance of Witnesses*

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *See In re Volkswagen II*, 545 F.3d at 316. The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum. *See Novelpoint Learning v. Leapfrog Enter.*, No 6:10-cv-229, 2010 WL 5068146, at *6 (E.D. Tex. Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses); *See also West*

*Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).

With regards to the compulsory process, AT&T again contends there will be relevant third-party witnesses in California from Qualcomm, Broadcom, Apple, HTC, and LG. (Doc. No. 25, at 14.) However, AT&T does not identify any of these witnesses or their locations. AT&T specifically names two prior art inventors located in the Northern District of California, Brian Agee and Nelson Sollenberger, as well as a prosecuting attorney for a related patent who is located in the Northern District of California. (Doc. No. 31, at 4; Doc. No. 25, at 11.) AT&T also identifies a former employee of Adaptix's parent corporation, Acacia, who is located in San Diego, California. (Doc. No. 31, at 3.) Adaptix identifies four former employees with relevant testimony related to "Adaptix's products, sales and operations." (Doc No. 28, at 9.) Three of the witnesses identified by Adaptix are in the Dallas/Fort Worth area, and one is in Austin, Texas. (Doc. Nos. 28-4, 28-5, 28-6, 28-7.) Adaptix also specifically identifies four employees of AT&T Labs located in Austin, Texas, who are knowledgeable regarding "AT&T Mobility's development and implementation and testing of its accused 4G LTE network," and specifically identifies each individual's knowledge and contributions to that work. (Doc. No. 28, at 8-9.)

Here, AT&T has only identified two prior art witnesses, and a prosecuting attorney for a related patent, who would be subject to the absolute subpoena power of the Northern District of California. AT&T has also identified one former employee of Acacia located in San Diego, California.[2] Adaptix has specifically identified eight third-party witnesses with relevant knowledge, three of whom Adaptix contends live or work within 100 miles of this District, and the remainder of whom are located in Austin, Texas, and subject to this Court's trial subpoena

---

[2] Because San Diego, California is more than 100 miles outside of the Northern District of California, Mr. Taub can only be compelled to trial under Fed. R. Civ. P. 45(c)(1)(B)(ii), which would require a showing that he "would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B)(ii).

power upon a showing that they "would not incur substantial expense" in traveling to trial. Fed. R. Civ. P. 45(c)(1)(B)(ii). Weighing AT&T's vague assertions and identification of only two prior art witnesses and one former Acacia employee in California against Adaptix's identification of four AT&T Labs employees and four former Adaptix employees with relevant knowledge who are subject to this Court's subpoena power, the Court finds this factor weighs against transfer.

*(c) The Cost of Attendance for Willing Witnesses*

In analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citations omitted).

As discussed above, AT&T only specifically identifies one AT&T witness, Mr. Caine, who is located in the Northern District of California, and identifies six others who are located in Washington. (Doc. No. 31, at 3). AT&T also identifies two of Acacia's employees who are located in Newport Beach, California, and maintains generally that there are several relevant third-party companies located in California. (Doc. No. 25, at 11-13.) In its declaration, AT&T also concedes at least three of its employees with relevant knowledge are in or near this District. Caine Decl. at ¶¶ 7, 8. Adaptix identifies two Adaptix employees with relevant knowledge in or near this District, Marvin Key and Christian Dubuc. (Doc. No. 28, at 3.) Adaptix also identifies AT&T's Principal Architect, Marc Grant, who has helped build AT&T's 4G LTE network and is

8

located in Austin, Texas. (Doc. No. 28, at 7.) Adaptix further names three AT&T witnesses who are located in Atlanta, Georgia and who have been involved in the development of AT&T's 4G network. (Doc. No. 28, at 11.)

Moreover, considering the third-party witnesses discussed above who may be potentially willing, AT&T has identified four potential third-party witnesses in California, and Adaptix has identified six former Adaptix employees who are all located in Texas, as well as four AT&T Labs employees located in Texas. Thus, considering all witnesses identified, there are slightly more potential witnesses for whom this Court would be more convenient. Accordingly, on balance, this factor weighs slightly against transfer.

*(d) Other Practical Problems*

*(i) Judicial Economy*

Although judicial economy is not among the list of the enumerated factors, it can be a "paramount consideration when determining whether a transfer is in the interest of justice." *Volkswagen II*, 565 F.2d at 1351. The Court weighs this factor according to the situation that existed at the time the action was initiated. *See Hoffman*, 363 U.S. at 343 (indicating motions to transfer venue are to be decided based on "the situation which existed when the suit was instituted."); *In re EMC Corp.*, No. 10-cv-435 2013 WL 324154, at *2 (Fed. Cir. Jan. 29, 2013).

AT&T argues that judicial economy favors transfer to the Northern District of California because Judge Grewal has familiarity with the parties and technology. (Doc. No. 25, at 12.) AT&T further identifies three suits currently pending in the Northern District of California involving related patents and devices used on AT&T's network (5:15-cv-00364, -00366, and -00962 (N.D. Cal.)). (Doc. No. 25, at 12.) All of these cases, however, were not pending at the time of the filing of the complaint and are therefore irrelevant to the Court's venue inquiry. *See*

*In re EMC Corp.*, 2013 WL 324154, at *2 ("a district court may properly consider any judicial economy benefits which would have been apparent at the time the suit was filed"). AT&T has, however, identified one other case (5:13-cv-01776 (N.D. Cal.)), which has proceeded through claim construction and motions for summary judgment have been decided on two patents related to the '375 Patent asserted in this litigation.

At the time the present action was instituted, two cases involving the patent-in-suit, the '375 Patent, were simultaneously filed in the Eastern District of Texas—*Adaptix, Inc., v. Sprint Spectrum LP,* No. 6:15-cv-0044 and *Adaptix, Inc., v. Cellco Partnership d/b/a Verizon Wireless*, No. 6:15-cv-0045. At the time the instant action was filed, there were no pending transfer motions in either action. *See In re EMC Corp.*, 2013 WL 324154, at *2 ("the district court could properly consider the benefits to judicial economy arising from having the same judge handle both [Plaintiff's] suits against the petitioners and [Plaintiff's] suits against other parties involving the same patents and technology as to which there was no issue of transfer."). In addition, at the time of the filing of the instant action, there were 3 cases pending in this District involving the two related patents (6:12-cv-17; 6:12-cv-20; 6:12-cv-120). Like the instant action, those 3 additional pending cases are assigned to Judge Schroeder. Moreover, at the time of filing, those cases had similarly proceeded through claim construction and summary judgment had been briefed.

In sum, at the time this action was instituted, the Northern District of California had one pending case and a judge with familiarity of two related patents, and the Eastern District of Texas had three pending cases and a judge with the same level of familiarity of the same two related patents, as well as two newly filed actions involving the asserted patent. Accordingly, on balance, the Court finds this factor weighs slightly against transfer.

## II. The Public Interest Factors

The parties agree that the public interest factors are neutral, aside from the administrative difficulties flowing from court congestion and local interest considerations. With regard to the administrative difficulties, AT&T contends the factor is neutral (Doc. No. 25, at 15), but Adaptix contends cases proceed to trial more quickly in this District and cites to general statistics (Doc. No. 28, at 13.) As the Court has repeatedly found in the past, the parties' reliance on general civil statistics provides the Court with little guidance as to the speed with which patent cases reach trial. *See West Coast Trends, Inc.,* No. 6:10-cv-688, 2011 WL 5117850, at *4 (E.D. Tex., Oct. 27, 2011) ("[a]s is common with this factor, the parties cite to incongruous statistics which prevents the Court from drawing a meaningful conclusion as to court congestion."). Accordingly, due to its speculative nature, the Court finds this factor neutral.

*(b) The Local Interest in Having Localized Interests Decided at Home*

The location of the alleged injury is traditionally an important consideration in weighing this factor. *TS Tech,* 551 F.3d at 1321. However, in a patent infringement case, when the accused products are sold nationwide, the alleged injury does not create a substantial local interest in any particular district. *Id.* Local interest may also be determined when a district is home to a party because the suit may call into question the reputation of individuals that work and conduct business in the community. *Hoffman–La Roche,* 587 F.3d at 1336.

AT&T contends that "the Northern District of California has a strong and particularized local interest in this case," but fails to explain in any detail what that interest is. (Doc. No. 25, at 15.) Moreover, AT&T has failed to show through its motion any significant tie this case has to the Northern District of California. Adaptix contends this District has a local interest as Adaptix is headquartered in this District. (Doc. No. 28, at 14.) Because AT&T has not shown any local

11

interest the Northern District of California has in this case and Adaptix has shown at least some connection to this District, the Court finds this factor weighs slightly against transfer.

*(c) The Remaining Public Interest Factors*

The remaining public interest factors are neutral. Both courts are familiar with federal patent law and there are no conflicts to avoid.

## CONCLUSION

For the aforementioned reasons, the Court cannot find that the Northern District of California is a clearly more convenient forum. The only witnesses specifically identified rendered the consideration of compulsory process to weigh against transfer, while the costs of willing witnesses, judicial economy, local interests, and the location of sources of proof weighed slightly against transfer. Moreover, all other public interest factors were rendered neutral.

Ultimately, AT&T has failed to show that the Northern District of California is clearly more convenient; rather, the showing demonstrates at best a mere shift of inconvenience. *See In re Apple Inc.*, 456 Fed. Appx. 907, 909 (Fed. Cir. 2012) ("What is more, measured against cases like *Volkswagen*, *TS Tech*, *Genentech,* and *Acer,* there is a plausible argument that [defendant] did not meet its burden of demonstrating below that the transferee venue is "clearly more convenient."); *Wellogix Technology Licensing LLC v. Automatic Data Processing, Inc. et al*, 6:11-cv-401 (E.D. Tex. March 19, 2013) ("although litigation is always an inconvenience, the "clearly more convenient" standard does not address a shift in inconvenience"). Accordingly, the Court **DENIES** AT&T's Motion to Transfer.

**So ORDERED and SIGNED this 21st day of September, 2015.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE